No. 3222.—J. A. S. BECKHAM *v.* JOHN HENDERSON—Heirs of A. D. PALMER, Warrantors.

The heir becomes seized of the succession by operation or law from the moment that it is opened by the death of the ancestors, and before taking any steps to put himself in possession, or expressing a willingness to accept, and even though ignorant that the succession has been opened in his favor. Prescription is therefore suspended by the fact of minority from the date that the succession falls to the heir until his majority.

If the court has jurisdiction, the informalities prior to a decree of sale of succession property are cured, and the purchaser is protected against such irregularities. But if property be sold under such decree that belongs to another, and does not belong to the succession, then and in that case the owner of such property cannot be precluded from showing the facts and recovering his own.

APPEAL from the Fifth Judicial District Court, parish of East Feliciana. *Posey, J. Cross & Hardee,* for plaintiff and appellee. *McVea & Kilbourne,* for defendants and appellants.

This case was tried by a jury in the court below.

HOWE, J. In the year 1831 or 1832, John A. Beckham, the father of plaintiff, married Jane Coleman, who died in 1836, leaving an infant child, Rosana Jane Beckham. On the first of November, 1838, he married Lucy L. Smith, who died on the second of March, 1841, leaving no other descendant but plaintiff; and in September of the same year plaintiff's father also died, leaving but the two children, to wit: Rosana by his first wife, Jane Coleman and plaintiff by his last wife, Lucy Smith. In the year 1852 Rosana died, being at the time of her death about fifteen or sixteen years old. The plaintiff claims that his father purchased this land during the lifetime of his first wife, Jane Coleman, and at her death, Rosana, her only surviving child, became the owner of an undivided half of the same, and at Rosana's death

plaintiff inherited all of her rights. It is not claimed that plaintiff or his half sister, Rosana, was ever divested of the title to this land by any proceeding contradictorily with either of them; but the answer alleges that the defendant purchased the land from A. D. Palmer on the twentieth of March, 1853; that A. D. Palmer purchased from Adam Palmer on the seventh May, 1849, and that Adam Palmer purchased it at the probate sale of John A. Beckham, deceased, and that the same was sold under a regular decree of the court to pay debts. This probate sale was made on the first of July, 1848, and the land was sold as the property of John A. Beckham, deceased.

The case was submitted to a jury, whose verdict is embodied in the decree of the court, recognizing the plaintiff as the owner of one undivided half of the land, and fixing the value of the improvements at $1000, one-half of which was to be paid by plaintiff.

There was judgment in favor of the defendants against the warrantors for $2530, and both defendants and the warrantors have appealed. In argument, they rely upon the following grounds of defense for a reversal of the judgment:

*First*—The prescription of ten years.

*Second*—That their title to the entire tract of land is perfect, they having in good faith purchased the same at judicial sale made under and in conformity with the decree of a court having jurisdiction.

I. Upon the point of prescription, they urge that the plaintiff was twenty-seven years old when suit was filed, and that six years of prescription had unquestionably accrued in favor of appellants; that from the death of Jane Coleman, in 1836, until 1855, when the statute was passed which by operation of law accepted the succession for plaintiff with benefit of inventory [acts of 1855, 144], her succession was vacant; that prescription runs against a vacant succession; that Adam Palmer bought and entered into possession in July, 1848, and that six years and eight months elapsed before the legal acceptance of the succession for the plaintiff, by act of March, 1855; that this acceptance did not interrupt but suspended prescription, and that, therefore, adding the two periods together, we have twelve years and eight months of time during which prescription ran between the possession of Adam Palmer and the beginning of the suit.

The answer to this ingenious but unsound argument is that the succession of Jane Coleman was not vacant, as contended for. The authority cited to prove that it was, Poultney v. Cecil, 8 La. 321, was decided under the Code of 1808. If that code were still in force, the appellants' syllogism would be less defective. But under the Code of 1825 the heir becomes seized of the succession by operation of law from the moment it is opened by the death of the ancestor, before taking any steps to put himself in possession, or expressing any will-

ingness to accept, and even though ignorant that the succession has been opened in his favor. C. C. 934, 939. And, therefore, in the case of Calvit v. Mulhollan, the facts of which were practically identical with those in the case at bar, it was held that prescription was suspended by the fact of minority after June 20, 1825, the date of promulgation of the latter code. The plea of prescription must therefore fail.

II. Upon the second point the appellants urge that the property in dispute was inventoried as the property of John A. Beckham; that his administrator applied for and obtained a decree to sell the same to pay debts; that the decree came from a competent court; that the sale was made and Adam Palmer became the purchaser; that he sold to A. D. Palmer, and A. D. Palmer to the present possessor, John Henderson, and that this decree, under which the probate sale was made, protects the purchaser in such a way as to give him title, not only to the portion of the land which belonged to John A. Beckham's succession at the moment of sale, but to the portion which at that moment belonged to some one else; and in support of this position we are referred to the case of Lalamie's Heirs v. Moreau, 13 L. 431, and to other cases which follow the principle there settled. We do not understand the decision cited, and the numerous decisions which have been based upon it, to settle any other principles than these—that informalities prior to a decree would not cause it to be a nullity, the court having jurisdiction, and that such a decree cures preceding irregularities, and as to them protects the purchaser. But we have not been referred to any authority, nor do we think any ought to exist, declaring a decree of sale in the succession of A, and a sale thereunder of property which belongs, not to A's succession, but to B, can preclude B from showing the facts and recovering his own.

Judgment affirmed.