## No. 139.

### JOHN B. OLIVER v. GEORGE C. NORCROSS ET AL.

*Mandamus* will not lie against mortgagee and recorder of mortgages to compel cancellation and erasure of contested inscription where one has a remedy by ordinary suit or rule to show cause against mortgagee, and irreparable damage will not be occasioned by the delay.

Recorder of mortgages has no legal authority to cancel inscriptions except where consent of all parties is shown or a judgment of court has so ordered.

*Jos. Spearing,* attorney.

*Braughn Buck & Dinkelspiel,* attorneys.

His Honor Judge Frank McGloin delivered the opinion and decree of the court in the words and figures following, to wit;

Relator is owner of certain real estate, which was bought at tax sale by respondent Norcross; the title so acquired being subsequently annuled by judicial decree. The latter then caused to be recorded in the office of the recorder of mortgages for this parish, as bearing a privilege on said property, his disbursement, for taxes, cost, etc. This is a proceeding by *mandamus* against said Norcross and the recorder for the erasure of such inscription. The form of action is excepted to, on the ground that relator is not entitled to the remedy he seeks to enforce.

The writ of *mandamus,* under the legislation of this state is a matter of express law. The Code of Practice, Art. 829, de-

fines it as an order, issued in the name of the state against, "an individual, or corporation, or court of inferior jurisdiction directing it to perform some certain act, belonging to the place, duty or quality with which it is clothed." It issues, by article 834 C.P., against public officers, "to compel them to fulfil any of the duties attached to their office, or which may be legally required of them."

The duty of the recorder of mortgages is explicitly defined by law. Civil Code of La. Art. 3371, declares that "inscriptions of mortgages and privileges are erased by the consent of the parties interested and having capacity for that purpose; this consent to be evidenced by a release or by a receipt given on the records of the court rendering the judgment on which the mortgage is founded."

Civil Code Article 3372, declares that such inscription "may also be erased by virtue of a judgment ordering such erasures in one of the cases hereafter enumerated."

Article 3373, requires such erasures to be made on a presentation of the acts, receipt and judgment which operate as a release of the mortgages and privileges to be erased, etc.

Other articles carefully define the manner in which such acts, releases and judgments shall be obtained and proven to the recorder. We find no where any right accorded this officer to erase inscriptions, at his own will and pleasure, nor any duty imposed upon him to do so, without proof of the creditor's consent, or a judicial decree standing in the place of such consent, when the latter is withheld. On the contrary, the unmistakable tenor of this legislation is to deprive such officer of all power and discretion in such matters, beyond what is by law conferred. Macarty vs. Landreaus, 8 Rob. La. 135, 136. The revised statutes, section 3141, amending Civil Code Article 3333, compels the recorder on simple application of any party in interest to erase inscriptions after they have stood without renewal, for a period longer than 10 years. We held in the case of Musson de Rochefort vs. Recorder of Mortgages, No. 140, that this provision must be confined to cases of peremption alone; and we may now add that the fact, that

the legislature has found it necessary to expressly provide for such *ex parte* erasures in one particular class of cases, brings into play the maxim, *inclusionis est exclusio alterius.* We cited in that case, the authorities which are numerous that privileges or mortgages, not mere simulations, could not be erased except by consent of those holding them or in pursuance of an order of a competent court, rendered after due notice and hearing. This is the law, and the recorder of mortgages is not in this case being called upon to fulfil a duty attached to his office, as contemplated by Code of Practice 834. He is not required to erase, until the consent of the creditor is shown, or is duly substituted by a judicial decree, regularly obtained. On the contrary, in asking him to destroy this inscription before this consent is obtained, and even against it, and before the courts have passed upon the controversy, is in fact requiring him to violate the law.

The question therefore presents itself, whether, outside Code of Practice Article 834, the relator is entitled to the decree he is demanding. In other words can he determine his dispute with Norcross, in this form of proceeding. It is true that a *mandamus* may issue against an individual, in a private capacity. It also issues of right in certain cases, and in the discretion of the judge in others. Code of Practice 830, compels its issuance in cases "where the law has assigned no relief by ordinary means, where justice and reason requires that some mode should exist of redressing a wrong and abuse of any nature whatever." It is evident that the controversy between the relator and the respondent Norcross, would form the legitimate subject matter of an ordinary suit, and it cannot be said that "the law has assigned no relief by ordinary means." High on Extraordinary Remedies, Section 10; State *ex rel* St. Martin vs. Police Jury, 29 La. Ann. 149; State *ex rel* Fix vs. Herron, 29 La. Ann. 848; Code of Practice Article 831, gives the judge a discretion to issue the writ "even when a party has other means of relief if the slowness of ordinary legal form is likely to produce such delay that the public good and the administration of justice will suffer by it." It is very

clear, that in determining whether, in place of his having his ordinary remedy open to him, a litigant is to be nevertheless allowed to proceed by *mandamus* the judge must be moved not by any consideration of particular interest, but by those alone of the public welfare. Whether in the peculiar circumstances a plaintiff delay would cause him greater hardship than it might to others, is not the question. We take it to be, that such a petitioner, to claim this speedy and exceptional process, must show that, in all cases such as this, the tardiness of ordinary process would absolutely defeat the right, so that the relief which would be accorded at the determination of a regular litigation would by reason of its slowness absolutely be of no avail and therefore, what was theoretically a remedy was practically none.

In this particular case, we cannot see how it can be held to be a greater hardship upon relator to compel him regularly to implead the person who claims the privilege against his property, whether valid or invalid, than it would be to force him to sue regularly one asserting title to the same property or one who might be withholding it from his possession. A creditor might show that his family was starving for the want of the money his debtor was denying him or that it was needed to prevent the foreclosure of a mortgage upon his own property; yet such a showing would not be within the contemplation of Code of Practice 831.

There is contrariety among the authorities in this state, upon the question involved in this cause. The following precedents may be considered as supporting relator's position; Savage vs. Homes, 15 La. Ann. 335; State *ex Res* Dr. Blieux vs. Recorder, 25 La. Ann. 61-2; State *ex rel* St. Mark vs. Police Jury, 25 La. Ann. 148. On the other hand, in Fix vs. Herron, 21 La. Ann. 848; State *ex res* Pusley No. 9699 of the Supreme Court lately decided, the reverse was held. We consider the latter citations as correctly propounding the law, and therefore apply them in this instance.

Judgment reversed and petition dismissed, reserving relator's right to proceed by ordinary suit; cost in both courts to be paid by relator.